IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02630–EWN–MEH

TRUSTEES OF THE COLORADO LABORERS' HEALTH AND
WELFARE TRUST FUND and
COLORADO LABORERS' HEALTH AND WELFARE TRUST FUND,

  Plaintiffs,

v.

AMERICAN BENEFIT PLAN ADMINISTRATORS, INC.,

  Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a contracts and Employee Retirement Income Security Act ("ERISA") case.

Plaintiffs, the Trustees of the Colorado Laborers' Health and Welfare Trust Fund ("Trustees")

and the Colorado Laborers' Health and Welfare Trust Fund ("Fund"), allege that Defendant,

American Benefit Plan Administrators, Incorporated: (1) breached a services agreement with the

Fund; and (2) breached the fiduciary duties it owed to the Fund pursuant to ERISA. 29 U.S.C. §

1001 *et seq.* (2006). This matter is before the court on: (1) "Defendant's Motion for Partial

Summary Judgment," filed on November 10, 2005; and (2) Defendant's "Motion to Exclude the

Testimony of Plaintiffs' Expert Witness Lewis W. Emanuelson from Trial," filed on November

22, 2005.  Jurisdiction is premised upon 29 U.S.C. § 1132 (2006) and 28 U.S.C. §§ 1331, 1337, and 1367 (2006).

## FACTS

### 1. *Factual Background*

#### a. *The Trust Agreement*

The Fund provides health benefits coverage for its participants, who are employees and dependants of the Fund's participating employers.  (First Am. Compl. ¶¶ 15–20 [filed Oct. 12, 2005] [hereinafter "Am. Compl."].)  The Trustees are the named fiduciaries of the Fund pursuant to the Colorado Laborers' Health and Welfare Trust Agreement ("Trust Agreement").  (Resp. to Def.'s Mot. for Partial Summ. J., Statement of Additional Disputed Facts ¶ 1 [filed Dec. 19, 2005] [hereinafter "Pls.' Resp."]; *admitted at* Reply in Support of Def.'s Mot for Partial Summ. J., Resp. to Disputed Material Facts ¶ 1 [filed Jan. 17, 2006] [hereinafter "Def.'s Reply"].)  The Trust Agreement enables the Trustees to designate persons other than the Trustees to carry out fiduciary responsibilities under the Trust Agreement.  (*Id.*, Statement of Additional Disputed Facts ¶ 2; *admitted at* Def.'s Reply, Resp. to Disputed Material Facts ¶ 2.)

#### b. *The Administrative Services Agreement*

On or about March 1, 1991, the Fund and Defendant entered into an Administrative Services Agreement ("ASA").  (Def.'s Mot. for Partial Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Nov. 11, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)  In the ASA, Defendant "acknowledge[d] that it [was] a fiduciary under [ERISA]."  (*Id.*, Ex. 1 at 10 ¶ 2.1 [ASA].)

The ASA required Defendant "to follow the Plan of Benefits and Amendments thereto, including resolution [sic] of the [] Trustees." (*Id.*, Ex. 1 at 9 ¶ 1.2 [ASA].)  Further, Defendant's performance of its obligations under the ASA was "governed by the rules, regulations, bylaws and policy determinations issued by the [] Trustees pursuant to the Trust Agreement." (*Id.*, Ex. 1 at 9 ¶ 1.2e [ASA].)

Defendant was the third-party administrator of the Fund under the ASA through December 31, 2002.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Pls.' Resp., Resp. to Statement of Material Undisputed Facts ¶ 2.)  Under the ASA, Defendant investigated, processed, paid, and recorded claims for the Fund.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pls.' Resp., Resp. to Statement of Material Undisputed Facts ¶ 3.)  The ASA further charged Defendant with the duty to "maint[ain] necessary procedures for receiving and processing all claims for benefits under the F[und]." (*Id.*, Ex. 1 at 12 ¶ 12 [Exhibit A to ASA].)

### c.      *Defendant's Reporting Responsibilities*

Defendant was the primary entity that gathered and submitted information to the Fund's stop-loss insurance carriers.  (Pls.' Resp., Statement of Additional Disputed Facts ¶ 9; *admitted in relevant part at* Def.'s Reply, Resp. to Disputed Material Facts ¶ 9.)  Defendant had the primary obligation to ensure that all information requested by the stop-loss carriers was timely and accurately provided to the carriers.  (*Id.*)  Defendant would normally decide what information would be disclosed to such carriers without consulting the Trustees or any other consultant of the Fund.  (*Id.*)

Plaintiffs allege two independent occurrences giving rise to both of their causes of action; each occurrence relates to Defendant's role in reporting claims to the Fund's stop-loss carriers. Plaintiffs first allege: (1) Defendant failed to give timely notice to the Fund's first stop-loss carrier, Pacific Life, of a claim in excess of $350,000; consequently, (2) Pacific Life has refused to reimburse the Fund for the claim. (Am. Compl. ¶¶ 15–20.)

Additionally, in 2001, Defendant prepared the Plan Sponsor Disclosure Statement ("Disclosure Statement") for submission to a second stop-loss carrier, Ullicare. (Pls.' Resp., Resp. to Statement of Material Undisputed Facts ¶ 10; *deemed admitted at* Def.'s Reply, Resp. to Disputed Material Facts ¶ 10.)[1]  Plaintiffs second set of allegations relate to this Disclosure Statement. Specifically, Plaintiffs allege: (1) Defendant failed to include in the Disclosure Statement information concerning a claim in excess of $200,000; consequently, (2) Ullicare has refused to reimburse the Fund for the claim. (Am. Compl. ¶¶ 24–28.)

## *2.    Procedural History*

On December 22, 2004, Plaintiffs filed a complaint. (Compl. [filed Dec. 4, 2004].)  On October 12, 2005, Plaintiffs filed their first amended complaint. (Am. Compl.)  Therein, Plaintiffs assert two claims against Defendant: (1) breach of contract; and (2) breach of fiduciary duty

---

[1]Without citation to the record, Defendant asserts it merely "assisted" in the preparation of the Disclosure Statement. (Def.'s Br., Statement of Undisputed Material Facts ¶ 10; *see also* Def.'s Reply, Resp. to Disputed Material Facts ¶ 10.)  I admonish Defendant for its failure to follow my procedural rules and deem Plaintiffs' initial proffer admitted. (*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 2 [emphasis in original] ["Each . . . [proffered] fact *must* be accompanied by a specific reference to material in the record which establishes that fact."].)

under ERISA.  (*Id.* ¶¶ 29–35.)  As noted above, the same factual allegations give rise to both

claims: Plaintiffs allege that Defendant breached its contractual and fiduciary obligations to the

Fund by failing to give timely notice of two large claims to the Fund's successive stop-loss

insurance carriers, resulting in the refusal to reimburse claims by both carriers.  (*Id.* ¶¶ 15–27.)

On October 17, 2005, Defendant filed its answer.  (Answer to Am. Compl. [filed Oct. 17, 2005].)

On November 10, 2005, Defendant filed a motion for partial summary judgment.  (Def.'s

Br.)  The motion concerns only Plaintiffs' ERISA claim.  (*Id.*)  Defendant asserts that: (1) the

Fund lacks standing to sue under ERISA; (2) Defendant is not a fiduciary as defined by ERISA;

and (3) Plaintiffs have failed to allege Defendant acted in bad faith, as required for ERISA

fiduciary liability.  (*Id.* at 6–14.)  Plaintiffs filed their response on December 19, 2005.  (Pls.'

Resp.)  Defendant filed its reply on January 17, 2006.  (Def.'s Reply.)

On November 22, 2005, Defendant filed a motion to exclude the proposed testimony of

Plaintiffs' expert, Lewis W. Emanuelson.  (Mot. to Exclude the Testimony of Pls.' Expert Witness

Lewis W. Emanuelson from Trial [filed Nov. 22, 2005] [hereinafter "Def.'s Exclude Br."].)

Therein, Defendant: (1) requests a *Daubert* hearing concerning Mr. Emanuelson's testimony; and

(2) argues Mr. Emanuelson's opinions are unreliable and irrelevant.  (*Id.* at 1, 8–11.)  Plaintiffs

filed their response on January 3, 2006.  (Pls.' Resp. to Def.'s Mot. to Exclude Testimony of Pls.'

Expert Witness Lewis W. Emanuelson from Trial [filed Jan. 3, 2006] [hereinafter "Pls.' Exclude

Resp."].)  Defendant filed its reply on January 17, 2006.  (Def.'s Reply to Pls.' Resp. to Def.'s

Mot. to Exclude Testimony of Pls.' Expert Witness, [sic] Lewis W. Emanuelson from Trial [filed

Jan. 17, 2006] [hereinafter "Def.'s Exclude Reply"].)

## ANALYSIS

### 1.     Defendant's Motion for Partial Summary Judgment

#### a.     Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of*

*Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### b.      Overview

As stated above, Defendant claims it is entitled to partial summary judgment on Plaintiffs'

ERISA claim because: (1) the Fund lacks standing to assert ERISA claims; (2) Defendant is not a

fiduciary as defined by ERISA; and (3) Plaintiffs fail to state a claim for breach of fiduciary duty

under ERISA.  (Def.'s Br. at 5–6.)  In light of my finding that Defendant is not an ERISA

fiduciary, I need not reach Defendant's first[2] and third arguments.  Thus, I address Defendant's

second argument below.

### c.      Defendant Is Not an ERISA Fiduciary with Respect to the Actions Subject to Complaint

ERISA is a comprehensive statute designed to protect employee benefit plans.  *See*

ERISA § 1, 29 U.S.C. § 1001 (2006).  In furtherance of that policy, ERISA designates as

fiduciaries not only those persons expressly named in a plan instrument ("named fiduciaries"), but

also those persons who exercise discretionary control or discretionary authority over the

---

[2]The parties dispute whether the Fund has standing to sue under ERISA.  (*See* Def.'s Br. 6–7; Pls.' Resp. 8–10; Def.'s Reply 6–11.)  Defendant is likely correct that the Fund does not have standing to sue on its own behalf for breach of ERISA fiduciary duty.  *See, e.g.*, *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, 361 F. Supp. 2d 1280, 1289 (D. Kan. 2005) (holding ERISA plans do not have standing to sue for breach of fiduciary duty).  The issue is of little practical consequence.  As Plaintiffs poignantly remark in a footnote at the end of their response to Defendant's argument: "[Defendant] has not asserted that the Trustees lack standing.  Therefore, no claim in this matter will be fully resolved regardless of how the [c]ourt ultimately rules on the Fund's standing."  (Pls.' Resp. at 10 n.1.)  *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 579 (7th Cir. 1991) (stating that trustees of an ERISA plan are indisputably ERISA fiduciaries).

management or administration of a plan ("functional fiduciaries").  *Reich v. Stangl*, 73 F.3d 1027,

1029 (10th Cir. 1996); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1498 (10th Cir.

1995).

Defendant argues it is not an ERISA fiduciary because the ASA did not accord it with any

discretionary authority or control over the management or administration of the Fund.  (Def.'s Br.

at 7–8.)  Plaintiffs contend Defendant is not entitled to summary judgment because Defendant is

both: (1) a named ERISA fiduciary; and (2) a functional ERISA fiduciary.  (Pls.' Resp. at 10.)

Defendant cannot contest that the ASA names it as an "ERISA fiduciary."  (*See* Def.'s Br., Ex. 1

at 10 ¶ 2.1 [ASA].)  Instead, Defendant argues that the language of the ASA does not control

whether it is a named ERISA fiduciary of the Fund.  (Def.'s Reply at 11–12.)  For reasons set

forth below, the court finds: (1) Defendant is not a "named fiduciary" as defined by ERISA; and

(2) although Defendant may have exercised discretionary authority or discretionary control over

the administration of certain aspects of the Fund, there is no genuine issue of fact regarding

whether Defendant is a "functional fiduciary" under ERISA because Defendant lacked the

requisite discretion with respect to the action subject to Plaintiffs' complaint.

### i.     *Named Fiduciary Status*

Defendant maintains that it is not a "named fiduciary" within the meaning of ERISA.

(Def.'s Reply at 11–12.)  I agree.  ERISA section 402(a)(1) covers the establishment of employee

benefits plans and requires that a plan instrument shall "provide for one or more named fiduciaries

who jointly or severally shall have authority to control and manage the operation and

administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) (2006).  The statute

defines "named fiduciary" as:

> a fiduciary who is named in the plan instrument, or who, pursuant to a procedure
> specified in the plan, is identified as a fiduciary (A) by a person who is an employer
> or employee organization with respect to the plan or (B) by such an employer and
> such an employee organization acting jointly.

*Id.* § 402(a)(2), 29 U.S.C. § 1102(a)(2).

While Defendant is named as a "fiduciary" in the ASA, such an administrative services

agreement is not a "plan instrument."  A plan instrument is a written document that establishes

and maintains an ERISA plan.  *See* ERISA § 402(a)(1), 29 U.S.C. §1102(a)(1) (stating that

"[e]very employee benefit plan shall be established and maintained pursuant to a written

instrument").  In the present case, two plan instruments exist: the original Trust Agreement and

the Restated Plan Document.  (*See* Pls.' Resp., Ex. D [Trust Agreement]; Def.'s Reply, Ex. A

[Restated Plan Document].)  Significantly, Defendant is not named as a fiduciary in either

instrument.  (*See* Pls.' Resp., Ex. D, *passim* [Trust Agreement]; Def.'s Reply, Ex. A, *passim*

[Restated Plan Document].)  Plaintiffs do not argue otherwise.  (*See* Am. Compl., *passim*; Pls.'

Resp., *passim.*)  Thus, the court finds Defendant is not "named in the plan instrument" as an

ERISA fiduciary.  Further, Plaintiffs do not allege that Defendant was identified as a fiduciary

"pursuant to a procedure specified in the plan instrument" by an "employer," an "employee

organization," or such entities acting jointly.  (*See* Am. Compl., *passim*; Pls.' Resp., *passim.*)

Based on the evidence presented, the court rejects Plaintiffs' unsupported assertion that

Defendant is a "named fiduciary" under ERISA section 402(a).  *See Annett v. Univ. of Kan.*, 371

F.3d 1233, 1237 (10th Cir. 2004) (noting that "unsupported conclusory allegations . . . do not

create a genuine issue of fact").

### ii.     *Functional Fiduciary Status*

Defendant also argues it is not a "functional fiduciary" for the purposes of ERISA.  (Def.'s

Reply at 15–16.)  Whether Defendant is a functional fiduciary requires analysis under ERISA

section 3(21)(A), which, in relevant part, provides:

> [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan . . . or (iii) he has any discretionary authority or discretionary responsibility in
> the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (2006) (emphasis added).  Thus, a person is an

ERISA "fiduciary only 'to the extent' that he acts in such a capacity in relation to the plan."

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (citing 29 U.S.C. § 1002[21][A]).  As such, in

every case charging breach of ERISA fiduciary duty, "the threshold question is not whether the

actions of some person employed to provide services under a plan adversely affected a plan

beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a

fiduciary function) *when taking the action subject to complaint*."  *Id.* (emphasis added); *see also*

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) (citations omitted)

("[ERISA section 3(21)(A)] plainly indicates that the fiduciary function is not an indivisible

one. . . .  [A] court must ask whether a person is a fiduciary with respect to the particular activity

at issue.").

The lynchpin of fiduciary status under ERISA is discretion.  *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).  "Discretion exists where a party has the 'power of free decision' or 'individual choice.'"  *David P. Coldesina, D.D.S., P.C. v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005) (citations omitted).  The Department of Labor ("DOL") has taken the position that those who lack "power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform . . . administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons" are not fiduciaries.  DOL Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 at D–2.  Thus, a person performing "ministerial functions" is not a fiduciary. *Id.*; *see also CSA 401(k) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1139 (9th Cir. 1999) ("[T]hird-party administrators are not fiduciaries if they merely perform ministerial functions, including the preparation of financial reports."); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) (ministerial tasks include those that might otherwise require discretion but which are performed within the confines of plan policies and procedures); *Flacche v. Sun Life Assurance Co.*, 958 F.2d 730, 734–35 (6th Cir. 1992) (insurer that merely pays claims according to preestablished formula is not an ERISA fiduciary).

Defendant broadly asserts it was "granted no discretionary authority or function at all." (Def.'s Br. at 11.)  Squaring off, Plaintiffs state that Defendant exercised "complete fiduciary judgment" with respect to the broad array of tasks it performed for the Fund under the ASA.[3]

---

[3]Although Plaintiffs assert that Defendant exercised "complete fiduciary discretion" concerning a broad array of tasks, unrelated to its alleged failures to report information to the

(Pls.' Resp. at 14.)  Nevertheless, the gravamen of Plaintiffs' claim is that Defendant exercised

meaningful discretionary authority or control with respect to the information Defendant gathered

and submitted to the Fund's stop-loss insurance carriers.  (*See id.* 13–15; Am. Compl. ¶¶ 15–28.)

The ASA charges Defendant with the duty to "maint[ain] necessary procedures for

receiving and processing all claims for benefits under the F[und]."  (Def.'s Br., Ex. 1 at 12 ¶ 12

[Exhibit A to ASA].)  Even construing the facts in the light most favorable to Plaintiffs, any

failure of Defendant to calculate or report properly the claims at issue in this case cannot

constitute breach of fiduciary duty because there is no evidence that Defendant exercised any

discretionary authority or discretionary control over the submission of accurate claims reports to

the Fund's stop-loss carriers.  *See Concrete Works*, 36 F.3d at 1518 (once moving party satisfies

its burden of showing absence of evidence supporting nonmoving party's case, nonmoving party

must demonstrate genuine issue for trial on material matter).

A review of Plaintiffs' allegations substantiates this conclusion.  Plaintiffs assert that their

stop-loss insurance carriers are bound to reimburse the Fund for any individual claim in excess of

$150,000 in a particular calendar year.  (Am. Compl. ¶ 3.)  Plaintiffs allege Defendant: (1) failed

to inform the Fund's stop-loss insurance carrier of one such claim in a timely manner; and (2)

failed to include a second such claim in the Disclosure Statement Defendant submitted on the

Fund's behalf to a new stop-loss carrier.  (*Id.* ¶¶ 18, 26.)  Consequently, Plaintiffs allege that the

---

Fund's stop-loss carriers, (*see* Pls.' Resp. at 13), whether Defendant was a fiduciary with respect
to such other unrelated tasks is immaterial.  *See, e.g.*, *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d
1155, 1158 (3d Cir. 1990) ("Fiduciary duties under ERISA attach not just to particular persons,
but to particular persons performing particular functions.").

carriers have refused to pay the two claims. (*Id.* ¶¶ 20, 27.) What Plaintiffs cannot plausibly

allege, however, is that Defendant exercised anything approaching "discretionary control" or

"discretionary authority" over the Fund with respect to its submission of claims data to the Fund's

stop-loss carriers. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (2006). Although

Defendant was certainly tasked with accurately reporting claims to the Fund's stop-loss carriers,

(Pls.' Resp., Statement of Additional Disputed Facts ¶ 9; *admitted in relevant part at* Def.'s

Reply, Resp. to Disputed Material Facts ¶ 9; *see also* Def.'s Br., Ex. 1 at 12 ¶ 12 [Exhibit A to

ASA]), the court fails to ascertain any remotely plausible factual scenario in which Defendant

might have exercised discretionary authority or discretionary control *over the Fund* in connection

with Defendant's obligation to report claims in excess of $150,000 *to the Fund's insurance*

*carriers*. Rather, it is apparent, from Plaintiffs' own allegations, that when an individual

beneficiary's annual claims exceeded $150,000 in a calender year, Defendant's obligation to

report such a claim was automatically triggered. (Am. Compl. ¶ 3.) Plaintiffs fail to allege how

discretion might enter into such a "clerical, mechanical, ministerial" calculation. *See Pohl v. Nat'l*

*Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992).

That Defendant allegedly failed to report two claims—to the obvious detriment of both

the Fund and Defendant's relationship with the Fund—indicates not that Defendant exercised

discretionary authority or control over the Fund, but rather that Defendant made a clerical error

or omission. Indeed, "[t]he power to err . . . is not the kind of discretionary authority which turns

an administrator into a fiduciary." *IT Corp.*, 107 F.3d at 1421; *cf. Olson v. E.F. Hutton & Co.,*

*Inc.*, 957 F.2d 622, 626 (8th Cir. 1992) ("A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets . . . [is] acting as a fiduciary.").

Moreover, Defendant's alleged failure to report the stop-loss claims is not one related to any fiduciary duties owed to the Fund, but rather is a failure to comport with the strictures of the Fund's contractual relationships with its stop-loss carriers. In *Union Health Care, Inc. v. John Alden Life Insurance Co.*, the court held that a breach of contract action brought against a plan's administrator for the administrator's failure to give timely notice to the plan's reinsurer of certain stop-loss and other claims was not precluded by ERISA's broad preemption standards. 908 F. Supp. 429, 430–31 (S.D. Miss. 1995). The *Union Health Care* court noted:

> [T]he *only* claim asserted against [the administrator] is that it failed to timely notify [the reinsurer] of excess claims. . . . *This claim does not relate to [the administrator's] responsibilities to the plan or its participants, with respect to which duties it has a fiduciary relationship.* Rather, the claims asserted in this case relate solely to [the administrator's] duties vis-á-vis the reinsurance contract.

*Id.* at 435 (emphases added); *see also Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355, 1360 (9th Cir. 1997) (plan's claim against plan administrator for failure to administer and process benefit claims had only "an incidental, tenuous relationship" with the ERISA plan such that ERISA preemption did not apply); *Via Christi*, 361 F. Supp. 2d at 1286–87 (fiduciary status does not attach to plan administrator "merely because it provided information to [an insurance carrier] regarding the eligibility of plan participants to receive benefits"). Just as in *Union Health Care*, Plaintiffs' claims in the present case arise out of Defendant's failure to execute properly the ministerial task of reporting claims to the Fund's stop-loss carriers. Such a straightforward task hardly touches upon the domain of fiduciary responsibility. *Cf. Pegram*, 530

-14-

U.S. at 231 (noting "fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries").

Further, as this court previously noted, even assuming Defendant was an ERISA fiduciary with respect to the Fund because it exercised discretion over other aspects of the Fund, Defendant's fiduciary capacity would not carry over to the ministerial task of timely notifying the Fund's stop-loss carriers of excess claims.  *See Coleman*, 969 F.2d at 61 ("[T]he fiduciary function is not an indivisible one . . . a court must ask whether a person is a fiduciary with respect to the particular activity at issue."); *Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998) ("A person is a fiduciary [under ERISA] only with respect to those aspects of the plan over which he exercises authority or control."); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 417 (5th Cir. 1990) (same); *Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987) (same); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984) (same).

Plaintiffs attempt to skirt this conclusion by asserting that Defendant executed the following "critical fiduciary functions:" (1) "interpreting stop loss [sic] carrier's disclosure requests;" (2) "creating systems that would provide for adequate disclosures of information;" and (3) "training its staff so that they could properly exercise these discretionary functions."  (Pls.' Resp. at 14–15.)  Each of these so-called "critical fiduciary functions" is nothing more than a subsidiary function to the administration of the ultimate ministerial task of communicating claims in excess of $150,000 to the Fund's stop-loss carriers.  It would defy logic to conclude Defendant exercised fiduciary discretion with respect to the execution of functions auxiliary to an ultimate

-15-

task that is itself ministerial.  Indeed, a conclusion to the contrary would subvert any distinction between discretionary and ministerial functions.

The plaintiff in *Munoz v. Prudential Insurance Company* made an argument similar to that which Plaintiffs have raised.  633 F. Supp. 564 (D. Colo. 1986).  In *Munoz*, a plan beneficiary sued the plan's third-party administrator for breach of fiduciary duty arising out of the administrator's delayed response to a request for a pre-determination of benefits.  *Id.* at 566–67. Specifically, the plaintiff alleged the administrator exercised fiduciary discretion "insofar as it and only it could decide how quickly it would respond to [the p]laintiff's request for confirmation of coverage."  *Id.* at 568 (internal quotation marks omitted).  The court rejected the plaintiff's position, stating:

> While the discharge of purely ministerial tasks might require a degree of discretion . . . this decision making is not the type upon which ERISA predicates fiduciary liability.  Such discretion is inherent in even the most innocuous of clerical acts. . . .

*Id.* (citing 29 C.F.R. § 2509.75–8, D–2).  Thus, while Defendant in the present case may well have exercised discretion in connection with such functions as creating systems to provide for adequate disclosure of stop-loss information and training employees to implement those systems, such discretion was not of a fiduciary nature.  *Cf.*, *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (third-party administrator that, *inter alia*, could unilaterally amend ERISA plan to bring it into compliance with federal law exercised ERISA fiduciary discretion).  For the foregoing reasons, this court declines to accord fiduciary status to a third-party administrator's decisions relating to the fulfilment of its ministerial tasks.

Plaintiffs' further assertion that Defendant's former employees viewed Defendant as a fiduciary with respect to the Fund is even less availing. (Pls.' Resp. at 12–13.) Indeed, that certain former employees believed Defendant exercised "complete fiduciary discretion" is wholly irrelevant to the question whether Defendant was a functional fiduciary under ERISA section 3(21)(A). *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (2006).

Even the lone case Plaintiffs cite in connection with their contention that Defendant is a functional fiduciary fails to support the position. (*See* Pls.' Resp. at 12.) Plaintiffs point the court to *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tennessee*, in which a court rejected the plaintiffs' argument that if the defendant was a fiduciary as to any of its conduct with respect to the plan, the defendant was a fiduciary as to all of its conduct with respect to the plan. 313 F. Supp. 2d 739, 748 (W.D. Tenn. 2004). The court noted that a person is an ERISA fiduciary only with respect to those aspects of the plan over which it exercises authority or control. *Id.* (citing *Grindstaff*, 133 F.3d at 426). As discussed above, even if this court assumes that Defendant exercised fiduciary discretion as to other aspects of the Fund, the existence of such fiduciary discretion in those arenas would not alter the purely ministerial nature of Defendant's obligation to report claims exceeding $150,000 to the Fund's stop-loss carriers.

In light of all of the foregoing, there is no genuine issue as to whether Defendant's obligation to report excess claims was fiduciary in nature. In fulfilling—or failing to fulfill—this obligation, Defendant did not exercise any discretionary authority or discretionary control over the Fund. Consequently, Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (2006).

**2.      *Federal Jurisdiction Over Plaintiffs' Contract Claim***

Plaintiffs' federal claim provided the sole basis for this court's original jurisdiction over

this case.  (Am. Compl. ¶ 2.)  Plaintiffs' only remaining claim for relief is a state law breach of

contract claim.  (*Id.* ¶¶ 29–31.)  Plaintiffs do not assert diversity jurisdiction as a basis for their

claim, and a review of the record fails to support that the parties are diverse.[4]  *See Penteco Corp.*

*Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (stating that where the

pleadings are found wanting a court may review the record for evidence that diversity does exist).

Thus, were Plaintiffs' contract claim to remain before this court, it would do so solely on the basis

of supplemental jurisdiction.  (*See id.* ¶ 2 [asserting supplemental jurisdiction under 28 U.S.C. §

1367].)  In light of my determination that Plaintiffs' federal claim is not viable, I decline to

exercise supplemental jurisdiction over Plaintiffs' contract claim.  *See* 28 U.S.C. § 1367(c)(3)

(2006) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if

---

[4]In order for a district court to have original jurisdiction over a civil action on the basis of
diversity of citizenship: (1) the amount in controversy must exceed $75,000; and (2) the dispute
must be between citizens of different states.  28 U.S.C. § 1332(a) (2006).  Further, a corporation
is deemed to be a citizen of any state by which it has been incorporated and of the state where it
has its principal place of business.  *Id.* § 1332(c)(1).  Even assuming Plaintiffs had asserted
jurisdiction based on diversity of citizenship, Plaintiffs have fallen short of alleging the essential
facts necessary for a determination regarding whether the court may exercise diversity
jurisdiction.  (*See* Am. Compl. at 5 [alleging Defendant is a California corporation, but failing to
indicate the location of its principal place of business]; *id.*, *passim* [failing to state Plaintiffs are
citizens of Colorado].)  Although the court has little reason to doubt that Plaintiffs are citizens of
Colorado or that Defendant's principal place of business is elsewhere than Colorado, the court is
not entitled to make such presumptions on Plaintiffs' behalf.  Indeed, "[s]ince federal courts are
courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party
invoking federal jurisdiction bears the burden of proof."  *See Penteco Corp. Ltd. P'ship v. Union*
*Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citation omitted).  Plaintiffs' Amended
Complaint fails to satisfy this burden.

"the district court has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").

### 3.    *Defendant's Motion to Exclude*

Defendant also filed a motion to exclude from trial the testimony of Plaintiffs' expert witness, Lewis W. Emanuelson.  (Def.'s Exclude Br.)  In light of the foregoing, Defendant's motion is moot.

### 4.    *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.    DEFENDANT's motion for partial summary judgment (#37) is GRANTED.

2.    DEFENDANT's motion to exclude testimony (#40) is DENIED as moot.

3.    As per the court's determination that it lacks original jurisdiction over Plaintiffs' first claim, that claim is DISMISSED without prejudice to refiling in state court.

4.    The clerk shall enter judgment in favor of Defendant and against Plaintiffs, dismissing Plaintiffs': (1) first claim without prejudice; and (2) second claim with prejudice.

5.    The hearing set for Friday, September 15, 2006, is VACATED.

-19-

Dated this 13th day of September, 2006

                                             BY THE COURT:

                                             s/ Edward W. Nottingham
                                             EDWARD W. NOTTINGHAM
                                             United States District Judge